

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

honorable Lee Brady, Commissioner,
Department of Banking
Austin, Texas

Dear Sir:

Opinion No. 0-2005
Re:  Authority of the Banking Com-
missioner in charge of an in-
solvent bank for liquidation
to make expenditures or agree-
ments for the conservation of
assets without an order of
the District Court.

We have your letter of February 27, 1940, asking
for the opinion of this department as to the above captioned
subject matter, which letter is as follows, to-wit:

"(1) The insolvent bank is the holder
of a note representing the unpaid balance
owing upon a crop loan made to a farmer
during the year prior to failure of the
bank, and is secured by a lien upon his
stock and tools, and upon the next year's
crop.  Due to the closing of the bank the
farmer is unable to obtain a new loan from
the bank to finance the planting and har-
vesting of a new crop and applies to one
of the federal agencies for a loan for the
purpose of making a crop.  The said agency
invariably requires the execution by the
Banking Commissioner of a 'non-disturbance
agreement' before making a loan.  This
agreement, in effect, subordinates the
lien of the bank to the lien created to
secure the federal agency insofar as the
bank's lien is a lien on the crop, and also
includes an agreement on the part of the
banking Commissioner not to disturb the

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

farmer in the use of his tools and stock during the coming crop year. The Commissioner is of the opinion that it is to the best interest of the bank to execute the agreement.

"(2) The bank holds a lien upon stock of a value less than the amount of its debt, and the owner of the stock, finding a purchaser who is willing to pay a fair price for the stock, proposes to sell the stock and apply the proceeds of the sale to his debt, leaving the balance of the indebtedness still owing the bank. It will be necessary for the Commissioner, either expressly or by implication, to release the lien of the bank upon the stock sold..

"(3) The same situation as that detailed in paragraph (2) above, quite often arises with reference to real estate loans where a whole or a part of the land securing the indebtedness is sold and the proceeds applied on the debt, the Commissioner being required to execute a partial or full release of the lien.

"(4) Before the closing of the bank it acquires a lien upon personalty under a pledged contract containing a power of sale authorizing the bank to sell the personalty at public or private sale. The Commissioner finds a person who is willing to bid the reasonable value of the property at the sale and decides to permit the property to be struck off to the third party under such bid.

"(5) The bank holds a lien upon live stock and the debtor, without any specific agreement that the stock is to be taken in cancellation of the debt, simply turns the stock in to the Commissioner and indicates that he is no longer interested in the transaction. The Commissioner has an opportunity to sell the stock for a

reasonable value and decides to make the sale.

"(6) The debtor, as in paragraph (5) above, turns the stock in to the bank but specifically agrees that the Commissioner is to sell the stock and apply the proceeds to the debt, leaving the unpaid balance still owing.

"Transactions such as above outlined usually involve property of small value, and if the Commissioner is required in every case to apply to the court or the judge for authority to carry out the proposals, a considerable portion of the value of the property involved will be used in court costs. It is the desire of this Department to exercise every precaution legally necessary, but at the same time, not to uselessly waste the assets in its hands by spending unnecessary court costs.

"In the light of the above, I respectfully submit the following question:

"Is it necessary, under the law, for the Commissioner to apply to the District Court for authority to carry out any or all of the proposals as outlined in Paragraphs numbered (1) to (6) above?"

A few words with respect to the nature and general powers of the Banking Commissioner will not be amiss. On the contrary, such a statement will furnish the key to the problems, and others of a similar nature, submitted in your inquiry.

The State Banking Commissioner is a State officer made by law superintendent and instructor of the State's banking system of Texas. (Rev. Civ. Stat., Article 347) He is clothed with the power of visitation of State banking institutions, with authority to close any institution violating the laws of the State, as set forth in the statutes. He is by law made the liquidator of closed banks coming into his

banks, (Rev. Civ. Stats., Art. 371), except in those cases where he voluntarily refers the matter to the Attorney General for judicial liquidation. (Rev. Civ. Stats., Art. 370).

In the matter of liquidating such a bank "the Commissioner is authorized to collect moneys, claims, and debts due to such insolvent banks and perform such acts as are necessary to conserve its assets and business, and to liquidate the affairs of such insolvent bank." (Rev. Civ. Stats., Art. 453).

It will be borne in mind that the authority of the Banking Commissioner belongs to him by virtue of his position as a State officer and not by virtue of any sort of appointment by any court as a receiver or liquidator, as in ordinary cases of insolvency proceedings.

The Commissioner acts upon his own initiative and independently of the orders of the court, except only in those instances where the statute has specifically required the approval of the District Court of the county wherein the insolvent bank is located. This limitation upon his otherwise complete power, insofar as it is pertinent to your inquiries, is found in Article 454 of the statutes, as follows:

> "Upon the order of the District Court of the county in which such bank is located, if in session, or the judge thereof, if in vacation, the Commissioner may sell or compound all bad or doubtful debts, and may sell real or personal property of such banks on such terms as the court shall direct, and under like order of said court, or the judge thereof, he may sell or compound bad or doubtful stockholders' assessments and sell stockholders' assessments levied against stockholders of such bank on such terms as the court shall direct. No such order shall be entered or sale made without notice and hearing."

As a liquidator of the bank, the Commissioner is a trustee, the depositors, other creditors and the stockholders

(in a sense) the beneficiaries, and hence he may do everything necessary to conserve the assets of the bank. (See Zollman banks and Lanking, vol. 9, § 6111). Not only is this the general rule, but it is the statutory rule in Texas, as shown by Article 453 of the statutes above quoted. Of course, any act of his in the conservation of the assets in his hands is subject to the express reservation of the statute contained in Article 454 with respect to the sale of assets, the compounding or compromise of debts due the bank and the like.

The Commissioner's acts with respect to the conservation of the assets in his hands should be those which a sound and fair official discretion suggests to him as the proper business and official course. His duties are those that would be exercised by an ordinarily and reasonably cautious, capable person occupying his official position. Such official acts of his are final and are not subject to appeal or review by any other tribunal or court whatsoever. It is only the abuse of his powers that could be reached even by a court of equity.

With these general but indisputable principles in mind, we answer your inquiries in the order in which you have propounded them, as follows:

(1) The subordination agreement, such as mentioned by you, clearly, if the facts justify it, is one which the Banking Commissioner in the exercise of his undisputed right and duty of conservation of the assets in his hands, has the power to make. If the new loan by another to the farmer for the purpose of enabling him to make a crop, is reasonably necessary or helpful to the Commissioner in realizing upon his own claim, the subrogation in favor of the one making such new loan is an act of conservation authorized by law, and not in any sense a sale of an asset of the bank, nor is it a compromise or compounding of an indebtedness due the bank.

(2) There is a difference between a debt and a lien securing the payment of such debt. Each is property, of course, but the lien has no separate existence independent of the debt, and cannot be segregated therefrom and sold as an asset within itself. The case put by you in this question is a mere conventional method by agreement of the parties concerned to foreclose the lien and apply the proceeds of the sale to the debt. This is in legal effect enforcement of the lien for the purpose of collect-

ing the debt -- a thing the Commissioner is commanded by law to do.

(3) What we have said above with respect to question "2" is also applicable to your question "3". The fact that the security consists of land rather than of personal property makes no difference in the matter.

(4) In a case where the bank asset is a note secured by a pledge of collateral the situation is no different from that discussed in questions "2" and "3" above. The pledged lien may be foreclosed by the Commissioner in accordance with the terms of the pledge contract and the method suggested by you may, of course, be followed. This is collection and not sale or compounding in anywise.

(5) Where the Commissioner peaceably takes possession of mortgaged property, as he may be authorized to do by the terms of the instrument, or where the debtor merely surrenders the mortgaged property to the Commissioner under the mortgage, without any agreement whatever as to the method of foreclosure and application of the proceeds, the Commissioner is authorized to sell and apply the proceeds to the debts, but he should follow the terms of the mortgage as to the method of foreclosure; that is, he should resort to a court foreclosure unless another or summary method is authorized by that instrument.

(6) Where the debtor, however, turns the mortgaged property over to the Commissioner and agrees that the Commissioner is to sell the same and apply the proceeds to the debt, there is the conventional or agreed foreclosure, and the Commissioner may proceed accordingly without resort to the court for a judicial foreclosure.

So that, it is the opinion of this department that no court order is necessary, but the Commissioner may proceed in such cases as you state as hereinabove indicated.

Very truly yours

ATTORNEY GENERAL OF TEXAS

Ocie Speer
Assistant

OS-MR APPROVED MAR 8, 1940     By

Gerald C. Mann

APPROVE